# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **DAVID KEITH FRYE,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10CV00028 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III; Nicole A. Schmid, Regional Assistant Counsel, Kenneth DiVito and Robert Kosman, Special Assistant United States Attorneys, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff, David Keith Frye, filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits and social security income pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433, 1381-1383d (West 2003

& Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g) and 1383(c)(3).

Frye filed for benefits in October 2006, alleging disability since September 1, 2006, due to his status post liver failure caused by alcohol-induced cirrhosis. He later amended his claim to include depression and anxiety. His claim was denied initially and upon reconsideration. Craft received a video hearing before an administrative law judge ("ALJ"), during which Frye, represented by counsel, and a vocational expert ("VE") testified. The ALJ denied Frye's claim on January 25, 2008. Frye appealed and submitted new information, but the Social Security Administration's Appeals Council denied his Request for Reconsideration. Frye then filed his Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is ripe for decision.

II

Frye was forty-three years old when he filed for benefits, a person of younger age under the regulations. *See* 20 C.F.R. § 404.1563(c) (2010). Frye, who has a high school equivalent education, has worked in the past as a delivery driver. Frye has not worked since September 2006.

Frye presented to the emergency room at Wythe County Community Hospital on September 16, 2006, after suffering a seizure at home. Due to his uninsured status, Frye was hospitalized through October 16, 2006, in the intensive care unit. After consultation, a team of doctors diagnosed Frye with terminal alcoholic cirrhosis with subacute liver failure, encephalopathy secondary to the cirrhosis, seizures secondary to the cirrhosis, hypertension, and hypokalemia. Records show that for a period of several days following his initial hospitalization, Frye was agitated, disoriented and confused. However Frye's functional status improved with treatment and his liver function stablized. Frye was not a candidate for liver transplant at that time, and after discussing ongoing treatment options, Frye was discharged into hospice care upon his stablization. Upon discharge, Frye was alert, understood his terminal diagnosis, and exhibited improvement in his mental status.

Through 2006 and 2007, Frye received follow-up care from primary treating physicians Beth Taylor, M.D., and Douglas Rogney, M.D. While hospitalized, Dr. Rogney sent correspondence to the Social Security Administration stating that Frye was incapacitated and unable to apply for medical and Social Security benefits for himself. Although Drs. Rogney and Taylor primarily monitored Frye's liver function, they also treated him for complaints of anxiety, depression, episgastric pain, ringing in his ears, and rib pain. Both reported progressive improvement in Frye's liver

symptoms after Frye received outpatient care for his alcohol abuse. Dr. Taylor advised that Frye could completely recover from his liver condition, provided he abstained from further alcohol use. In late 2006, Frye was discharged from hospice care.

Follow-up appointments with Frye's treating physicians revealed further improvement to his physical condition. During a January 2007 examination, performed for the purpose of evaluating Frye's fitness for a commercial driver's license, Dr. Rogney noted that Frye was off all medications for his liver problems and had "completely recovered." (Tr. 401.) Consultatory appointments performed at Dr. Rogney's request note that Frye's labs "recovered remarkably well." (Tr. 448.) Likewise, Dr. Taylor advised Frye that his strength had improved such that he could return to work. (Tr. 444.)

Despite the improvements to Frye's physical condition, Frye reported ongoing anxiousness and depression. Through 2006 and 2007, Dr. Rogney prescribed various medications attempting to treat these conditions, but due to reported adverse reactions, Frye went through several successions of different prescription combinations. In June 2007, Frye was referred to Amy Blevins, FNP, for medication management. He reported experiencing weight gain, auditory hallucinations, and recurrent anxiousness under his medical regime, but that these symptoms alleviated

when he unilaterally stopped taking his medications. Blevins diagnosed Frye with major depressive disorder, recurrent and severe psychosis, anxiety disorder, and alcohol dependence. Blevins assessed Frye with a global assessment of functioning ("GAF") score of 55, indicating moderate impairment in social and occupational functioning.[1] She prescribed a new course of treatment, and followed up on this treatment plan later that month. During this follow-up appointment, Frye reported discontinuing several of the medications, as he felt they were ineffective and perhaps causing ringing in his ears. Frye reported a good energy level and good motivation, stating that he was staying busy around the house working in the garden and mowing the lawn. Later visits with Blevins adjusted his medications, but showed improvement to his depressive symptoms and anxiety. Although Frye reported spending his time almost exclusively with his parents, his activities and participation in the household chores were unremarkable. Blevins recommended Frye engage in activities promoting outside socialization.

---

[1] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in social, occupational, or school functioning. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

In addition to Frye's medical treatment for his mental impairments, he also received counseling with Jim Blair, a licensed counselor with Mount Rogers Community Services Board, following Frye's discharge from hospice care. Blair's treatment notes reveal that, at Dr. Taylor's recommendation, Frye actively searched for work in the trucking industry for a sustained period of several months. Frye stated to Blair that he was anxious, but eager to return to work, and that he feared being unable to find work that he felt himself capable of performing. On several occasions, Frye reported major frustrations with his continued inability to find employment and his continued uninsured status.

In addition to these frustrations, Frye reported ongoing psychomotor retardation, recurrent thoughts of death, excessive guilt, depressed mood on most days, inability to concentrate, social withdrawal, low energy, and difficulty sleeping. Blair noted limitations in Frye's social and employment skills, assessing him with a GAF score of 40-45. Later follow-up with Blair showed ongoing episodes of depression and anxiety, but that Frye was exhibiting improvement and handling his symptoms fairly well.

In addition to the opinions of his treating physicians, Frye's records were reviewed by state agency psychologist Eugenie Hamilton, Ph.D., and state agency physician Shirish Shahane, M.D. Dr. Hamilton found moderate restrictions in Frye's

abilities to perform activities of daily living; to maintain concentration, persistence or pace; and to maintain social functioning due to his substance abuse disorder. However, she concluded that he was able to meet the basic demands of competitive work on a sustained basis. Dr. Shahane's residual functional capacity assessment found minor limitations in his ability to lift or carry weights over fifty pounds and found he could stand and/or walk for six hours and sit for six hours during an eight-hour workday. Dr. Shirish also imposed limitations on Frye's ability to climb ladders, ropes or scaffolds, and prohibited his exposure to hazards. A second round of state agency reviewing assessments substantiated Dr. Shahane and Dr. Shirish's findings.

After reviewing Frye's records, the ALJ determined that Frye had severe impairments of status post liver failure, alcohol abuse with cirrhosis currently in remission, depression, and anxiety. Taking into account Frye's limitations, the ALJ determined that Frye retained the residual functional capacity to perform light work, provided it took into account the physical limitations recommended by the state agency physicians. The ALJ also noted that Frye's anxiety, impaired concentration, and depression further limited him to nonexertional, simple, routine, repetitive, and unskilled tasks requiring only occasional interaction with the general public. The VE testified that someone with Frye's residual functional capacity could perform occupations such as food prep worker, dishwasher, and janitor. According to the VE,

there are approximately 9,300 jobs in the region and 411,000 jobs in the national economy. Relying on this testimony, the ALJ concluded that Craft was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

Following the ALJ's unfavorable decision, Frye requested review and submitted additional evidence to the Appeals Council for consideration. This evidence consisted of updated treatment notes from Mount Rogers, Blevins, and Dr. Rogney. Frye also submitted evaluative psychological tests performed by Judith Fiebig, M.A., and Pamela Tessnear, Ph.D. The tests performed by Fiebig revealed mild symptoms of anxiety and normal results on a depression scale. Dr. Tessnear's evaluation diagnosed major depressive disorder, generalized anxiety disorder, and assessed his GAF score at 52. Medical assessments of Frye's ability to perform mental work-related activities were consistent with earlier evaluations. On several occasions, Frye reported improvements to his mental conditions and denied depressive symptoms. The most recent letter from Mount Rogers reported that Frye denied continuing depression and that the center recommended discharge from its care. The Appeals Council denied review.

Frye argues the ALJ's decision is not supported by substantial evidence. For the reasons detailed below, I disagree.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2010). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and

mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Frye's current appeal focuses on his mental condition, and he now argues that the ALJ failed to properly evaluate the impact of his mental impairments on his ability to work.

The ALJ has the exclusive authority to evaluate medical opinions in the record and, when assessing the weight given to a medical opinion, the ALJ should consider whether the opinion is supported by laboratory findings and the record as a whole. 20 C.F.R. § 404.1527 (2010). When considering what weight to give an opinion, an ALJ must consider the length of a treatment relationship, the frequency of the examination, and the nature and extent of the treatment relationship. 20 C.F.R. §§ 404.1527, 416.927 (2010). In addition, the weight given to an opinion by an ALJ may also depend upon whether the opinion is consistent with the record as a whole. 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) (2010).

Unlike many of the Social Security appeals that come before this court, here the evaluations of Frye's mental impairments by treating physicians, counselors, non-treating consultative reports, as well as the evaluations by state agency doctors, are markedly consistent. All the opinions in the case recognize that Frye suffers from severe depression and anxiety, and that these conditions limit his abilities to perform work-related activities. Frye's GAF scores consistently show moderate to severe impairment. Frye has sought prescription medicine to address his symptoms, with varying results, dependent at least partially on Frye's willingness and ability to remain on a consistent course of treatment. The ALJ properly recognized these impairments as "severe" under the Act.

However, the records in this case are similarly consistent in the conclusion that Frye's depression and anxiety do not incapacitate him so that he is wholly unable to work. In fact, Dr. Taylor recommended that Frye return to the workplace. Accordingly, the ALJ found that Frye was not disabled under the Act, albeit she significantly limited Frye's workplace capabilities according to the recommendations contained in the record.

In this appeal, Frye argues that the ALJ failed to accord proper weight to the opinions of Blair and Dr. Rogney.

Although Blair concluded that Frye was seriously limited or had no useful ability to perform most mental work-related functions, this conclusion contradicts the remainder of Blair's treatment notes. Blair's assessment of Frye's GAF score is the lowest of the those on record, but still indicates borderline moderate to severe limitations, and Blair's assessment was within a relatively small range of those otherwise made. Although Blair noted Frye's repeated episodes of anxiety and depression, he also reported Frye as handling those episodes well. Additionally, Blair consistently found Frye to be stable, and no evidence in his reports shows that Blair concluded that Frye was subject to periods of functional loss or incapacitation.

Frye also points to Dr. Rogney's assessment that Frye was without useful ability to perform most mental work-related functions. Although Dr. Rogney

prescribed medication for Frye's mental conditions, he also ordered consultative counseling and medication management when his treatment course was ineffective. Dr. Rogney primarily acted as Frye's physician for his liver-related ailments, and there is little evidence in Dr. Rogney's notes that would justify according it such significant weight as to override the other evidence on record.

Finally, the ALJ found that Frye's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. As I must, I defer strongly to the ALJ's assessments of credibility. During the claimed period of disability, Frye actively searched for employment on several occasions, including applying for a commercial driving license. Although Frye was unsuccessful in these attempts, an applicant who is working is, by definition, not disabled under the Act. That Frye was looking for employment is highly persuasive evidence indicating that he was not disabled during the claim period. *See House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) (actively searching for work during the claim period may support discounting the individual's claims of disability).

Thus, substantial evidence exists to support the ALJ's decision to limit Frye's abilities in the workplace in accordance with the overwhelming evidence regarding his mental health impairments.

IV

Alternatively, Frye contends that the latest records submitted before the Appeals Council warrant a remand because they are new and material to his claim of disability. This argument also fails.

Because the Appeals Council considered Frye's additional evidence before denying his request, this court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc). "This task is a difficult one, since in essence the court must review the ALJ's decision — deemed the final decision of the Commissioner — in the light of evidence which the ALJ never considered, and thus never evaluated or explained." *Ridings v. Apfel*, 76 F. Supp. 2d 707, 709 (W.D. Va. 1999). It is the role of the ALJ, not this court, to resolve evidentiary conflicts, including inconsistencies in the evidence. *See Hays*, 907 F.2d at 1456. Thus, this court needs to carefully balance its duty to review the entire record with its obligation to abstain from making factual determinations. *See Davis v. Barnhart*, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005).

Previous courts have navigated this fine-line by limiting the analysis of the additional evidence, focusing the inquiry on the narrow question of whether the new

evidence "is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports." *Id.* (citation and internal quotation marks omitted). If the evidence does create a conflict, then the case is remanded for the Commissioner to weigh and resolve the conflicting evidence. *Id.*

I find that the additional records contain no new findings or diagnoses. Dr. Rogney and Blevins treated Frye over a lengthy period of time and neither indicated that Frye's health had deteriorated or otherwise changed since the ALJ's decision. Moreover, the additional opinions of Fiebig and Dr. Tessnear are consistent with those made by previous physicians and treating sources. In fact, the most recent record reflects Frye's own assessment that he no longer suffered from depressive symptoms and that Mount Rogers recommended terminating Frye's mental health treatment. Consequently, this evidence does not contradict or call into doubt previous medical findings, and thus, does not require a remand for further consideration.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: February 20, 2011

 /s/ JAMES P. JONES
 United States District Judge